IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-02673-PAB-SBP

CHARLES K. ASHLEY, JR.,

Plaintiff,

v.

CITY OF ENGLEWOOD, COLORADO,
TAMARA NILES, in her official capacity, and
ROBERT KELLERMAN,

Defendants.

---

**ORDER**

---

This matter comes before the court on defendants City of Englewood and Tamara Niles's Motion to Dismiss [Docket No. 25] pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Charles K. Ashley, Jr. filed a response, Docket No. 28, and the City of Englewood and Tamara Niles (collectively, the "City") replied. Docket No. 31. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This case involves Mr. Ashley's complaint that the eaves of his neighbor's house, while not extending into Mr. Ashley's property, nevertheless violate the City of Englewood's zoning rules regarding setbacks.

[1] The following facts are drawn from Mr. Ashley's amended complaint, Docket No. 12, which are assumed to be true for purposes of ruling on the motion to dismiss, and the exhibits to the original complaint, which are referred to by both sides in their briefing without objection as to their authenticity and which the amended complaint incorporates by reference. *See* Docket No. 12 at 3.

Plaintiff Charles K. Ashley, Jr. is a homeowner who resides at 3324 West Chenango Avenue in Englewood, Colorado. Docket No. 12 at 2, ¶ 3. Defendant Robert Kellerman owns the adjacent home located at 3316 West Chenango Avenue. *Id.*; *see also* Docket No. 1 at 32, 37.

Mr. Ashley states that the zoning dispute began on March 5, 2019 when the City issued Mr. Kellerman a building permit to construct a new detached garage on the side of his home adjacent to Mr. Ashley's property. Docket No. 12 at 2, ¶ 4; *see also* Docket No. 1 at 24, 39 (building permit and survey). Pursuant to the City's development code, Mr. Kellerman's detached garage was subject to a five-foot side setback requirement, meaning the structure's exterior wall could be no less than five feet from Mr. Ashley's property line. *See* Docket No. 1 at 33 (describing code requirements). However, the code also provided an allowance for the projection of "architectural features" into the side setback; specifically, the code permitted a projection of four inches for every foot of required setback. *Id.* at 34. In the case of Mr. Kellerman's garage, that equates to a total permitted projection length of 20 inches. *Id*. Further, Mr. Ashley claims that there is a 24-inch restriction on the length that a roof eave may project from a structure. Docket No. 12 at 2, ¶ 4.

Mr. Ashley claims that the finished garage's roof eave, which he disputes is an "architectural feature," projected 25.5 inches from the structure and 13.2 inches into the setback. *Id.*; *see also* Docket No. 1 at 39 (survey). On August 10, 2023, the City conducted an investigation into the projecting roof eave, confirming that the roof eave "extend[ed] approximately 25.5 inches from the structure." Docket No. 12 at 2, ¶ 4; *see also* Docket No. 1 at 34 (report). The City was "unable to determine whether the

projection of the eaves into the setback constitute[d] a violation of the Englewood Municipal Code" because the location of the property line was unclear. Docket No. 1 at 34. However, the City concluded that the eave was an "architectural feature" and thus allowed to project some length into the setback. *See id*. at 43. Mr. Ashley claims that, following the City's investigation, he paid for a survey of the property line, which confirmed that the eave exceeded the 24-inch total projection limit by 1.5 inches and encroached on the setback. *Id.* at 2, ¶¶ 10-11.

On August 26, 2025, Mr. Ashley initiated this lawsuit. Docket No. 1. In the amended complaint, Mr. Ashley, appearing *pro se*, brings several municipal liability claims. Docket No. 12 at 2-3, ¶ 5. Although Mr. Ashley names Mr. Kellerman as a defendant, none of his claims allege liability on Mr. Kellerman's behalf. *See id.* Further, Mr. Ashley's claims against Ms. Niles, the Englewood City Attorney, in her official capacity are, in substance, claims against the City itself. *See Hays v. Ellis*, 331 F. Supp. 2d 1303, 1306 n.2 (D. Colo. 2004) ("[A] suit against a municipal employee in his 'official capacity' is the same as a suit against the city." (citing *Drake v. City & Cnty. of Denver*, 953 F. Supp. 1150, 1156 n.5 (D. Colo. 1997))). Thus, Mr. Ashley's sole federal claim is one for municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

Mr. Ashley's first claim is a "class of one" equal protection claim pursuant to 42 U.S.C. § 1983, alleging that the City, by declining to enforce the Englewood Development Code as to Mr. Kellerman's garage eaves while prosecuting Mr. Ashley for minor infractions, violated Mr. Ashley's rights under the Equal Protection Clause of the Fourteenth Amendment. Docket No. 12 at 2, ¶ 5. Mr. Ashley's second and third claims

are for declaratory judgment and for mandamus. These "claims" do not state independent grounds for relief, but rather identify what form of relief he is seeking. Mr. Ashley's fourth claim is a state-law claim for inverse condemnation, alleging that the City's sanctioning of the encroaching roof eave has effectuated a taking of Mr. Ashley's property rights without compensation. *Id.* Mr. Ashley seeks "not less than $162,200" in compensatory damages. *Id.* at 3, ¶ 6.

On October 21, 2025, the City filed its motion to dismiss, seeking dismissal of Mr. Ashley's claims.[2] Docket No. 25. The City argues that Mr. Ashley's claims are barred by the statute of limitations; that Mr. Ashley lacks standing because he has suffered no cognizable injury; that the claims against Ms. Niles are duplicative of the claims against Englewood; and that Mr. Ashley has otherwise failed to state a claim. *Id.* at 3-7.

## II. LEGAL STANDARDS

The City moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3] Dismissal under Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting

---

[2] Although the motion to dismiss was mistakenly directed to the original complaint, *see* Docket No. 25 at 1 n.1, the City clarified in its reply that it intended its briefing to respond to the amended complaint, Docket No. 12. Docket No. 31 at 1 n.1. Mr. Ashley has not objected.

[3] Although the City couches its motion as falling exclusively under Civil Rule 12(b)(6), Docket No. 25 at 2-3, "[s]tanding is a question of subject matter jurisdiction, and thus a basis for 12(b)(1) dismissal." *Peck v. McCann*, 525 F. Supp. 3d 1316, 1335 (D. Colo. 2021), *rev'd in part on other grounds*, 43 F.4th 1116 (10th Cir. 2022).

evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When faced with a factual attack on subject matter jurisdiction, the district court does not presume the truthfulness of the complaint and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted). Consideration of "evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a "plaintiff must allege enough factual matter, taken as true, to make his 'claim to relief . . . plausible on its face.'" *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alterations omitted).

Finally, because Mr. Ashley is not represented by an attorney, the Court must construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## III. ANALYSIS

### A. Standing

The Court will first address the City's standing argument given that it implicates this Court's subject matter jurisdiction over the case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (providing that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III"); *Bharucha v. City of Greenwood Village*, No. 24-cv-02135-SKC-STV, 2025 WL 2430000, at *4 (D. Colo. Aug. 22, 2025) ("[T]he Court is required to police its own jurisdiction.") (citing *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 n.5 (10th Cir. 2021)). Defendants claim that plaintiff lacks standing "to enforce building code provisions on Kellerman's property given no encroachment or injury is alleged on Plaintiff's property." Docket No. 25 at 4. Defendants do not tie this argument to a particular claim, *see Santa Fe All. for Pub. Health & Safety*, 993 F.3d at 813 (courts "address standing on a claim-by-claim basis; a plaintiff may have standing to bring some, but not all, claims raised in a complaint.") (citing *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1279 (10th Cir. 1998)), but presumably make their standing argument as to all claims. In response, plaintiff argues that the zoning violation creates "a concrete, particularized injury" given that the Real Estate Disclosure Law, Colo. Rev. Stat. § 38-35.7-102,[4] requires that a seller disclose "any zoning violations or nonconforming uses." Docket No. 27 at 4. As a result, Mr. Ashley believes that, upon sale of his property, the statute would require him to disclose the zoning violation on Mr. Kellerman's property to prospective buyers. *Id.*

---

[4] In plaintiff's Notice to Correct the Record, Docket No. 35, Mr. Ashley indicates that he meant to cite § 38-35.7-101. *Id.* at 1.

Mr. Ashley also argues that, by permitting Mr. Kellerman to encroach on the setback, "the City has directly injured Plaintiff, the very person the ordinance was designed to protect." Docket No. 28 at 2.

Article III standing has three elements: 1) an injury in fact, which is "an invasion of a legally protected interest"; 2) a causal connection between the injury and the challenged action of the defendant; and 3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (citations omitted). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized." *Lujan*, 504 U.S. at 560. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id*. at 560 n.1. "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. at 340 (citing Black's Law Dictionary 479 (9th ed. 2009)). Moreover, the injury in fact must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citation omitted).

In *Rectory Park, L.C. v. City of Delray Beach*, 208 F. Supp. 2d 1320, 1324-25, 1327 (S.D. Fla. 2002), *aff'd,* 82 F. App'x 221 (11th Cir. 2003), the court considered a challenge by nearby property owners to a municipality's adoption of a re-zoning

amendment that allowed a certain building project to increase in density from thirty dwelling units per acre to ninety-two units per acre, which the plaintiffs claimed would harm their property values. The court cited the *Zoning and Planning Deskbook* (2d ed. 2001), which observes that most of the law regarding a person's standing to challenge an administrative zoning decision is state common law, which generally requires that the "plaintiff must show some interest in land affected by the zoning and the plaintiff must allege specific pecuniary damage." *Id*. at 1327 (quoting Douglas W. Kmiec, *Zoning & Planning Deskbook* § 7.8 (2d ed. 2001)). While state law standing is not Article III standing, the Court agrees that Mr. Ashley must show some concrete harm that is actual or at least imminent, *Lujan*, 504 U.S. at 560, which he has failed to do.

Mr. Ashley claims that he must disclose the eave problem on Mr. Kellerman's property upon sale of his property. As noted by the City, Docket No. 31 at 5, the statute that Mr. Ashley cites, § 38-35.7-101, Docket No. 35 at 1, contains no requirement that a property seller disclose zoning violations on a neighbor's property. Moreover, even though residential setbacks may be for the general benefit of all homeowners in the area zoned, this does not mean that any homeowner, even one next door, has standing to enforce zoning violations against the owner of the offending property, or against the city for allowing the violation, unless the plaintiff has alleged facts that plausibly demonstrate an imminent, concrete injury. Here, the complaint alleges that the eave in question is on a house adjacent to Mr. Ashley's house and that Mr. Ashley interacted with the City about the alleged code violation. Such allegations, however, only satisfy the particularization requirement. *Lujan*, 504 U.S. at 560 and n.1. There are no allegations in the amended complaint that Mr. Ashley has suffered a concrete injury

from the eave. And, even considering the exhibits to the complaint and Mr. Ashley's briefs, he nowhere identifies any harm that he has actually suffered. For example, Mr. Ashley does not claim that there is a pending sale of his house or identify any decrease in his home's value due to the Kellerman eave. And his disputes with the City over its enforcement of the development code regarding Mr. Kellerman's eave do not substitute for a concrete injury. As noted in *Carney v. Adams*, 592 U.S. 53, 58 (2020), "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it consequently does not show standing." As a result, Mr. Ashley lacks Article III standing for his federal claim.

However, in the event that Mr. Ashley does fall within the zone of interests protected by the easement rules and, as a result, has constitutional standing, the Court will address the City's motion to dismiss Mr. Ashley's federal claim.

**B. Equal Protection Claim**

**1. Statute of Limitations**

The City asserts that Mr. Ashley's equal protection claim is barred by the two-year statute of limitations. Docket No. 25 at 3-4. The basis of that claim is that the City "treated [Mr. Ashley] differently from Defendant Kellerman without any rational basis, motivated by a malicious intent to injure [Mr. Ashley] and shield the City from liability for its negligent permitting." Docket No. 12 at 2, ¶ 5. The City argues that Mr. Ashley should have been aware of the basis for his equal protection claim—the "negligent permitting"—by March 5, 2021, which is two years after the permit was issued. Docket No. 25 at 3; *see also* Docket No. 1 at 24. In response, Mr. Ashley asserts that the

statute of limitations did not begin to run until he obtained a survey because, prior to that, he was "unable to determine" whether the roof eave was in violation of the municipal code. Docket No. 28 at 2-3.

In Colorado, the statute of limitations for § 1983 claims is "two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). A § 1983 action "accrues when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotations and citation omitted). Generally, an equal protection claim accrues when the plaintiff "knew or should have known of the disparate treatment." *Fahs. Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013); *accord Fratus*, 49 F.3d at 676 (noting equal protection claim "may have accrued at some later date when Mr. Fratus learned, or should have learned, that the prison arbitrarily charged him more than other prisoners for similar damage"). The City asserts that the cause of action accrued on the date Mr. Kellerman received his building permit, a conclusion apparently drawn from the amended complaint's reference to "negligent permitting." Docket No. 25 at 3; *see also* Docket No. 12 at 2, ¶ 5. However, construing Mr. Ashley's pleading liberally, as the Court must, *Hall*, 935 F.2d at 1110, it appears more likely that Mr. Ashley is referring to the City's unequal treatment of Mr. Ashley and Mr. Kellerman, which was predicated upon the City's failure to enforce the setback and projection requirements as to Mr. Kellerman's garage. *See* Docket No. 12 at 2, ¶ 5. Accordingly, the claim would have accrued when Mr. Ashley knew, or had reason to know, that the City had decided not to cite Mr. Kellerman for a code violation. *See Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (providing that § 1983 claims accrue "when the plaintiff

knows or has reason to know of the injury which is the basis of his action" (quoting *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir. 1980))).

Accrual, "like tolling, is a fact-laden issue." *Fratus*, 49 F.3d at 676. Nonetheless, the Court finds that Mr. Ashley's equal protection claim falls outside the statute of limitations. In an email from Deputy City Attorney Victoria McDermott to Mr. Ashley, which Mr. Ashley attached to the original complaint, Docket No. 1 at 43-44, Ms. McDermott noted Mr. Ashley's "concerns about unequal code enforcement related to the setback requirements" applicable to the garage. *Id.* at 43. However, she noted that the city planner "conclude[d] that the structure meets the setback requirements." *Id.* This email was dated June 13, 2023. *Id.* Accordingly, Mr. Ashley was aware that the City intended to treat the roof eave as being in compliance with the zoning code—and that such conduct reflected "unequal treatment"—on that date. Mr. Ashley had until June 13, 2025, to bring a timely claim, yet he did not file this action until August 26, 2025. *Id.* at 1.

Mr. Ashley argues that his claim accrued when the survey, which he obtained in September 2023, "provided definitive proof" of the violation. Docket No. 28 at 3. But this argument misidentifies "the injury which is the basis of his action." *Johnson*, 925 F.2d at 1301. As previously noted, an equal protection claim accrues when the plaintiff "knew or should have known of the *disparate treatment*." *Fahs. Constr. Grp.*, 725 F.3d at 292 (emphasis added). The injury underlying Mr. Ashley's equal protection claim was the City's decision to treat the roof eave as an architectural feature, thus allowing it to

project, at most, 20 inches into the setback.[5] As evidenced by Ms. McDermott's email, Mr. Ashley had already raised concerns about "unequal code enforcement related to the setback requirements." Docket No. 1 at 43. This demonstrates awareness of the conduct giving rise to Mr. Ashley's alleged injury. The survey added no new information in that regard. For example, the survey did not establish for the first time that the eave projected into the setback at all; rather, that fact was established by August 10, 2023, at the latest, as reflected by the City's report from that date. *Id.* at 34. Nor did the survey reveal that the eave projected *more* than 20 inches into the setback, thus establishing a novel violation. Rather, it merely clarified that the roof eave projected approximately one foot into the five-foot setback, *id.* at 39, which was well within the permissible projection range for architectural features. *See id.* at 34. Accordingly, Mr. Ashley's claim is barred by the statute of limitations.

**2. Failure to State a Claim**

Alternatively, the City argues that Mr. Ashley fails to state an equal protection *Monell* claim. Docket No. 25 at 4-6. In the City's view, Mr. Ashley has not identified any similarly situated individual who was treated differently than him and has not plausibly alleged that the City lacked a rational basis for its decision to approve Mr. Kellerman's

---

[5] Alternatively, the injury was the City's decision not to enforce the 24-inch projection limit as to the roof eave. *See* Docket No. 12 at 4. However, the purpose of the survey was to locate the property line in order to measure the length of the eave's projection into the setback, not to measure the projection of the roof eave from the garage. *See* Docket No. 1 at 39. Indeed, the latter measurement was readily available at any point as it did not depend upon the location of the property line. This is evidenced by the City's August 10, 2023 report noting the length of the roof eave. *Id.* at 34 (noting eaves "extend approximately 25.5 inches from the structure"). Thus, all parties were aware of that "violation" on August 10, 2023, which still leaves Mr. Ashley's claim barred by the statute of limitations.

garage. *Id.* at 4-5. Relatedly, the City maintains that Mr. Ashley has not plausibly alleged that Mr. Kellerman's garage violates any part of the municipal development code. *Id.* at 6. In response, Mr. Ashley insists that he has adequately pled that the City's "shifting rationale" for approving the garage was irrational. Docket No. 28 at 3. Mr. Ashley does not clearly respond to the contention that he has not identified any similarly situated individual. *See id.*

"The paradigmatic 'class of one' case, sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005) (alternation omitted)). A plaintiff bringing such a claim "must first establish that others, 'similarly situated in every material respect' were treated differently," and second, that "this difference in treatment was without rational basis, that is, the government action was 'irrational and abusive,' . . . and 'wholly unrelated to any legitimate state activity.'" *Id.* (quoting *Jicarilla Apache Nation v. Rio Arruba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006); *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005)). The latter standard "is objective—if there is a reasonable justification for the challenged action, [courts] do not inquire into the government actor's actual motivations." *Id.* (citing *Jicarilla Apache Nation*, 440 F.3d at 1211). Courts "have approached class-of-one claims with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'" *Id.* (quoting *Jicarilla Apache Nation*, 440 F.3d at 1209).

Plaintiffs bear a "substantial burden" in demonstrating that others "'similarly situated in all material respects' were treated differently." *See id.* at 1217. But "[t]he requirement that a plaintiff show that similarly situated persons were treated differently 'is especially important in class-of-one cases.' " *Jicarilla Apache Nation*, 440 F.3d at 1212 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004)). Thus, a plaintiff "cannot prevail if there is *any* material difference between it and allegedly similarly situated parties that relates to a governmental interest." *Id.* For example, *Purze v. Vill. of Winthrop Harbor,* 286 F.3d 452, 453 (7th Cir. 2002), involved a class-of-one claim in which the plaintiffs, whose subdivision plat was denied approval, alleged that other similarly situated property owners were treated more favorably because their plats were approved. But the Seventh Circuit found material differences between the plaintiffs and allegedly similarly situated parties because they had "requested different variances," "submitted their plats during different time periods," and "had their plat requests granted by different and previous Boards." *Id.* at 455. Similarly, in *Kan. Penn Gaming, LLC,* 656 F.3d at 1220, the Tenth Circuit affirmed the dismissal of a class-of-one claim premised on the allegedly irrational enforcement of state nuisance laws against a casino, concluding that the plaintiff had failed "to show that other properties with ramshackle buildings and visible debris ha[d] somehow gotten a pass."

Turning to Mr. Ashley's amended complaint, the Court agrees with the City that Mr. Ashley fails to state a class-of-one equal protection claim. As the City notes, Mr. Ashley has failed to plausibly allege that any similarly situated person was treated differently than him. Mr. Ashley claims that Mr. Kellerman was given favorable treatment regarding the roof eave of his detached garage while the City "simultaneously enforced

minor code violations against" Mr. Ashley. Docket No. 12 at 2, ¶ 4. This allegation, however, is inadequate. For Mr. Ashley to be similarly situated to Mr. Kellerman, he would need to show that he had a similar roof eave, that the eave violated the same development code sections, and that the City enforced those code sections against him. *Cf. Purze*, 286 F.3d at 455 (noting parties "requested different variances"); *Kan. Penn Gaming*, 656 F.3d at 1220 (noting failure to show same conditions on another property). Moreover, it would need to be objectively clear that there was no difference between the two eaves for purposes of enforcing the development code. *See Jicarilla Apache Nation*, 440 F.3d at 1211 (noting "plaintiff must show that the official action was *objectively* irrational and abusive"). Code enforcement decisions often involve the type of "highly contextual judgments" that make the "already substantial burden" of showing similarity "especially difficult to satisfy." *See id.* at 1213. Mr. Ashley's vague, conclusory claim about his own alleged persecution is inadequate to state a claim. *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018).

Even assuming Mr. Ashley had been treated differently than Mr. Kellerman and the two were similarly situated, Mr. Ashley fails to allege the type of irrational and abusive conduct that could give rise to a valid class-of-one claim. The core of Mr. Ashley's claim of irrationality is the City's characterization of the roof eave as a "roof overhang," which is an architectural feature that may project into the setback. *See* Docket No. 12 at 2, ¶ 4; Docket No. 28 at 3. This is an irrational position, Mr. Ashley insists, because eaves are structural, while roof overhangs are not. Docket No. 28 at 3. However, as Mr. Ashley also notes, the code "provides no definition for 'roof overhang.'" *Id.* at 4. The City directs the Court to a case from the Missouri Court of Appeals that

includes a thorough discussion of the definition of an eave. *Hanna v. Nowell*, 330 S.W.2d 595, 600 (Mo. App. 1959). The court concluded that an eave is "[a] reasonable extension of the roof edge," which prevents rain "from running down the exterior sidewalls." *Id*. In other words, an eave is the "extension of the roof covering, or the overhang." *Id.* The fact that Mr. Ashley cites another source[6] with a contradictory definition of eave does not prove that the City's choice of a different definition was irrational. Moreover, it is not the role of federal courts to police the lexicon of code enforcement officers, as judges are not "general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking." *Kan. Penn Gaming*, 656 F.3d at 1216 (quoting *Jennings*, 383 F.3d at 1211). Likewise, even accepting that the eave projects one-and-a-half inches beyond the 24-inch limit, the Court would not find any irrationality in declining to enforce that limit. Such a violation is *de minimis*, and *de minimis* violations, more than any other, implicate the municipality's discretion in its enforcement decisions. *See id.* (noting the concern that federal courts will become the referees of local decisionmaking is especially strong when equal protection claims involve "challenges to low-level government decision-making, which often involves a great deal of discretion"). In sum, Mr. Ashley fails to plead a constitutional violation. And "there can be no municipal liability—and thus no *Monell* claim—without an

[6] The Court was unable to locate this source. Several other cases and statutes cited in Mr. Ashley's response either do not exist or do not support the propositions for which they were cited. *See* Docket No. 28 at 2; *see also* Docket No. 35 at 1. Mr. Ashley is warned that the inclusion of nonexistent or misrepresented law in future filings may result in proportional sanctions. *See Saber v. Amentum Tech., Inc.*, No. 25-cv-04084-NYW-MDB, 2026 WL 2138288, at *4 (D. Colo. May 6, 2026).

underlying constitutional violation." *Morphew v. Chaffee Cnty.*, 172 F.4th 802, 817 (10th Cir. 2026) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).

Although a dismissal under Rule 12(b)(6) is typically without prejudice, "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The Court concludes that amendment would be futile here. After considering the exhibits to Mr. Ashley's original complaint and his filings in this case, it is clear that Mr. Ashley's concern lies not with any "irrational and abusive" government conduct directed toward himself. *See Jicarilla Apache Nation*, 440 F.3d at 1211. Rather, he is preoccupied with the eave of his neighbor's detached garage, an eave that Mr. Ashley believes is too long. This is precisely the type of trivial dispute, masquerading as a class-of-one equal protection claim, that the Tenth Circuit has declined to countenance. *See Kan. Penn Gaming*, 656 F.3d at 1216-17. For "[i]f even innocuous inconsistencies" in government decisionmaking "gave rise to equal protection litigation, government action would be paralyzed." *Id.* Allowing Mr. Ashley to add new legal theories will not turn this otherwise-innocuous inconsistency into a constitutional violation. Mr. Ashley has not asked for leave to amend his complaint. Moreover, the Court has considered his arguments regarding administrative records, Docket No. 41, which have no bearing on any of the issues discussed herein. Amendment would thus be futile, and Mr. Ashley's equal protection *Monell* claim is properly dismissed with prejudice.

**C. State Law Claims**

The Court's jurisdiction over this case was based on its federal question jurisdiction over Mr. Ashley's equal protection *Monell* claim. In addition to his federal claim, Mr. Ashley brings a state law inverse condemnation claim.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court, however, "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis added)); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Having dismissed Mr. Ashley's sole federal claim, the Court, in its discretion, declines under § 1367(c)(3) to exercise supplemental jurisdiction over the remaining state law claim. *Cf. United Mine Workers*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Bd. of Cnty. Comm'rs v. Geringer*, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002) ("district courts should

dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial") (citations omitted).

Mr. Ashley's inverse condemnation claim is accordingly dismissed without prejudice.[7]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that City Defendants' Motion to Dismiss [Docket No. 25] is **GRANTED**. It is further

**ORDERED** that plaintiff's federal claim, claim one, is **DISMISSED with prejudice**. It is further

**ORDERED** that plaintiff's state law claim, claim four, is **DISMISSED without prejudice**. It is further

**ORDERED** that plaintiff's claims two and three, which do not state independent claims for relief, but rather identify what form of relief he is seeking, are **DISMISSED without prejudice**. It is further

[7] Under Colo. Rev. Stat. § 13-80-111(1), if claims are properly commenced within the statute of limitations and involuntarily dismissed because of lack of jurisdiction, the plaintiff "may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later." *See also Artis v. D.C.*, 583 U.S. 71, 74-75 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

**ORDERED t**hat this case is closed.

DATED: September 28, 2026

BY THE COURT:

Philip A. Brimmer
United States District Judge